THOMPSON, Judge.
The City of Wildwood (“City”) appeals the entry of a final summary judgment in favor of Gibbs & Register, Inc. (“G & R”) requiring the City to return to G & R a forfeited bid bond in the amount of 5% of the total cost of a construction project. The City argues on appeal that the trial court erred and that the forfeiture was appropriate because G & R breached the terms and conditions of its bid proposal. G & R argues that a contract was never formed and the City should have accepted the next lowest bid or rejected all the bids. We reverse.
The facts are not in dispute. The City issued an invitation to bid on a project to construct three reuse storage ponds for its effluent/wastewater system. The invitation to bid was accompanied by Instructions to Bidders (“Instructions”). Because some of the funds were provided by the Florida Department of Environmental Regulation (“FDER”), FDER’s Supplemental Conditions accompanied the Instructions.
The Instructions provided that “[a]fter expiration of the period for receiving Bids, no Bid may be withdrawn, modified or explained.” The Supplemental Conditions specifically provided participation goals for the utilization of Minority and Women’s Business Enterprise (“MBE/WBE”). A goal of 11% of the contract price was established for MBE participation and 1% of the contract price was established for WBE participation. The City could not execute the construction contract until it obtained approval from FDER regarding the extent of MB.E and WBE participation in the work. G & R signed the approved bid form indicating it would be bound by its requirements. The bid instructions provide that “submission of a bid constitutes an incontrovertible representation by the bidder that he has complied with every requirement of the Article YI of the Instructions to Bidders.” G & R was aware that it could comply with the minority requirements by presenting evidence that it had achieved *765 MBE/WBE goals or that it had put forth good faith effort in attempting to achieve its goals. The City was required to certify evidence of a contractor’s good faith effort before FDEE would approve the contract.
G & R submitted a bid for $510,095 (adjusted to $514,157 for correctable errors). The only other bid was for $593,587. G & R also submitted a bid bond from the Home Insurance Company (“HIC”) for 5% of the total project costs. Once the bids were announced, G & R discovered mathematical errors. G & R sought to withdraw its bid based on “good faith honest mistakes” consisting of the mathematical errors. G & R also took the position that it was not able to comply with the MBE/WBE participation requirements. The City declined to allow it to withdraw and awarded G & R the project based upon its lower bid. G & R responded that it could not meet the MBE/WBE participation goals. The City answered that documentation of an honest effort to find certified MBE/WBE would satisfy the requirement in lieu of minority participation. Nevertheless, G & R failed to inform the City of its efforts to meet the MBE/WBE participation goals. As a result, FDER refused to approve the award to G & R and the City was required to reject the bid for failure to comply with the participation goals. The City retained the bid bond and awarded the contract to the other bidder.
The City filed a complaint against G & R for damages stemming from the invitation to bid. G & R and HIC filed a counterclaim for damages resulting from the City’s refusal to return the bid bond. The parties moved for summary judgment. The trial court granted G & R’s motion for summary judgment and denied the City’s motion for summary judgment, and the City appeals.
G & R argues that it submitted a nonconforming bid, that therefore no contract was formed, and that therefore the City could either accept or reject its proposal, but could not pick and choose those conditions of the bid that it wanted. In arguing that there was no contract, G & R cites Harry Pepper & Associates, Inc. v. City of Cape Coral, 352 So.2d 1190 (Fla. 2th DCA 1977). In Pepper, the City of Cape Coral allowed a non-eon-forming bid to be amended after a competitive bidding process and award of the contract. The winning party, Gulf, was allowed to amend its bid to include specifically named pumps required in the specifications. The pumps Gulf originally listed were non-conforming. The court held that:
Faced with Gulfs substantially non-conforming bid, the City had but two proper alternatives: to award the contract to the next lowest bidder who met the specifications, or to reject all bids and readvertise for new ones. The City exceeded its authority by allowing Gulf to bring its bid into conformity with the specifications and then accepting it.
Id. at 1193. G & R argues that its bid was substantially non-conforming because it failed to include the MBE/WBE goals and that therefore the City had but two choices: award the contract to the next lowest bidder or reject all the bids.
The City argues that G & R breached the agreements in its bid proposal by failing to attempt to meet MBE/WBE participation goals, and by failing to provide documentation of its efforts to comply with MBE/WBE participation goals, thus triggering the forfeiture of the bid bond. The City further argues that G & R’s refusal to attempt to meet MBE/WBE goals was not only a breach of affirmative requirements under the bid proposal, it was an improper withdrawal from the competition. We agree and hold that G & R’s breach allowed the City to retain the bid bond.
The City relies upon the agreement made by G & R to be bound by its offer and the requirements contained in the bid documents. The bid documents adopted into G & R’s bid proposal imposed a duty upon G & R to attempt to comply with MBE/WBE goals. However, G & R refused to notify the City of steps taken to solicit MBE/WBE firms, thus causing the City to retain the bid bond. A review of the record reveals that G & R effectively and improperly used the MBE/ WBE program to withdraw from the competition, thereby breaching the requirements of its bid proposal. During discovery, the City learned that G & R had worked with minority contractors who could perform the work *766 necessary on the contract. In fact, G & R had solicited an electrical bid from a minority contractor to do the work. Even though the minority contractor’s bid was the lowest, G & R did not use the bid in its submission nor did it inform the City that a minority had bid upon aspects of the contract. The record indicates solicitation of the bid as well as certification from G & R that they had previously worked with minorities who had done this type of construction work would have been sufficient to get the approval of FDER.
The purpose of a bid bond is set forth in Appleman, Insurance Law and Practice § 5831 as follows:
The purpose of a bid bond is to assure that such bidder, if his proposal is accepted, will enter into a binding contract to do the work in accordance with such proposal. He enters such bid at his own risk, ordinarily not being excused by mistakes or errors in computation, and his bond is not discharged until a contract has been executed and a performance bond accepted in lieu of the bid bond. It provides that a certain amount of money will be paid in the event that a successful bidder on a public project fails to enter into a formal contract; it is a type of liquidated damages and it represents an added incentive to discourage the withdrawal of bids.
It follows that G & R’s bid was an offer to construct reuse storage ponds for $510,095. The bid bond, which accompanied G & R’s bid proposal, insured against a failure of G & R to adhere to the agreements and requirements of its bid proposal.
The bid bond reads in pertinent part:
The condition of the above obligation is such that whereas the Principal [G & R] has submitted to the City of Wildwood a certain Bid, attached hereto and hereby made a part hereof to enter into a contract in writing, for the Reuse Storage Ponds at the Rolling Hills Golf Course, Contract No. 9.
NOW THEREFORE,
(a). If said Bid shall be rejected, or in the alternative,
(b). If said Bid shall be accepted and the Principal shall execute and deliver a contract in the Form of Contract attached hereto (properly completed in accordance with said Bid) and shall furnish a bond for his faithful performance of said Contract, and for the payment of all persons performing labor or furnishing materials in connection therewith, and shall in all other respects perform the agreement created by the acceptance of said Bid, then this obligation shall be void; otherwise the same shall remain in force and effect, it being expressly understood and agreed that the liability of the Surety for any and all claims hereunder shall, in no event, exceed the penalty amount of this obligation as herein stated, [emphasis supplied].
The failure of G & R, as the successful bidder, to execute a contract for the work and its failure to perform the agreement created by the acceptance of their bid constituted a breach of the conditions of the bond. The refusal to comply with conditions when it had the ability to comply was a unilateral attempt by G & R to withdraw its bid. We think that G & R’s arguments in opposition are specious. The purpose of the bid bond was not to secure the construction of the project, but to see that G & R complied with the bid instructions and conditions. G & R did not and forfeiture of the bond was proper. Accordingly, we reverse and remand with instructions that a summary judgment be entered in favor of the City.
REVERSED and REMANDED with directions.
GRIFFIN, J., and PERRY, B., Jr., Associate Judge, concur.